## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ERIC LAMAR ELLIS,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-01095-O-BP** |
| | § | |
| **CITY OF WHITE SETTLEMENT,** | § | |
| **TEXAS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Amended Complaint filed by Plaintiff Eric Lamar Ellis ("Ellis") (ECF No. 19); the motions to dismiss filed by Defendants City of White Settlement ("the City") (ECF No. 35), Christopher Cooke (ECF No. 34), Payton Wyly (ECF No. 26), Johnathan Loser (ECF No. 28), Brad Bukowski (ECF No. 30), James Stewart (ECF No. 32), and Carlos Valladares (ECF No. 38); Ellis's responses (ECF Nos. 27, 33, 41); Defendants' replies (ECF Nos. 37, 40, 42-43); and Ellis's Surreply (ECF Nos. 52-54).

Also before the Court are Ellis's Motion for Summary Judgment (ECF No. 47); Defendants' Motion to Strike ECF Nos. 47-51 and 52-54 (ECF No. 55) and "Motion to Prohibit all Further Filings, Without Leave of Court, Until the Court Decides Defendants' Motions to Dismiss" (ECF No. 56); Ellis's first and second "Motion[s] to Take Judicial Notice" (ECF Nos. 62-63) and Motion for Judgment on the Pleadings (ECF No. 65); Defendants' Motion to Strike ECF Nos. 65-67 (ECF No. 71); and Ellis's "Motion in Limine Requesting the Court to take Judicial Notice" (ECF No. 89), "Motion for Entry of Default" (ECF No. 91), and "Motion for Judgment as a Matter of Law" (ECF No. 92).

On December 9, 2022, this case was automatically referred to the undersigned pursuant to Special Order 3. ECF No. 3. For ease of reference, the Court will refer to each Defendant (other than the City) by his last name.

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** the Motions to Dismiss and **DISMISS** Plaintiff's claims against Defendants **with prejudice**. Because this would render all other pending motions **MOOT**, the undersigned further **RECOMMENDS** that Judge O'Connor **DENY** all other pending motions.

## I.    BACKGROUND

Ellis alleges that the cities of Fort Worth, Lake Worth, and White Settlement enacted an "illegal 'stop and seize' practice of targeting, stopping, detaining, searching, and often seizing property from, apparently non-white persons." ECF No. 19 at 1, 5. He alleges that this policy resulted in his arrest twice in 2022. ECF No. 19 at 5, 12. He argues that this policy is unconstitutional both on its face and as enacted. *Id*. at 5, 11, 13.

Ellis "is a black African American" who alleges that "at all times relevant to this complaint [he] was not a carrier defined by the Texas Transportation Code." *Id*. at 5. He states that on or about December 5, 2022, while driving with his children in White Settlement, Texas, he stopped at a red light, when Defendant Wyly pulled him over, apparently for not having a license plate. ECF No. 19 at 5-6. Ellis alleges that his vehicle also lacked "state provided stickers" or any other form of state-issued vehicle identification. *Id*. at 5. Ellis says that he told Wyly that "he does not transport goods or persons and that he was not in any registration period with the Texas Transportation Code." *Id*.

Ellis asserts that after this, Wyly instructed him to step out of his car. *Id.* at 6. Ellis then apparently refused to do so, "informed the Officers that he wasn't a carrier defined by the Texas Transportation Code[,] and requested to be relinquished from the criminal accusations bestowed upon him." *Id.* at 6-7. Wyly then threatened to break the window if Ellis continued to refuse to step out of the vehicle. *Id.* at 7. Then, Stewart (who had arrived shortly before) reached into the window of the vehicle and opened the door from the inside before arresting Ellis. *Id.* at 6-7. Wyly and Stewart searched Ellis's vehicle and questioned his children but found no incriminating evidence. ECF No. 19 at 8. Even so, they arrested Ellis and took him to the White Settlement Police Department. *Id.* On arrival, Ellis asked to file a written civil complaint, but Wyly denied his request. *Id.* at 9.

Ellis alleges that on the same night at around 9:00 p.m., he pleaded not guilty to the charges brought against him, signed release forms, and should have been free to go. ECF No. 19 at 9. But while putting on his street clothes, Valladares and Bukowski forced him to "get back undressed" and locked him in a holding cell "for at least 5 more hours" before he was ultimately released. *Id.*

Ellis claims that all Defendants: (1) implemented and enforced a policy of stopping and searching people without probable cause or reasonable suspicion, and enforcement of this policy violated Ellis's Fourth Amendment rights; (2) selectively enforced the policy against people based on "race and/or national origin" in violation of the Equal Protection Clause of the Fourteenth Amendment; (3) engaged in federally funded racial discrimination in violation of Title VI of the Civil Rights Act of 1964; (4) violated his 4th Amendment and Due Process rights by overdetaining him; (5) were grossly negligent by refusing to provide him "with a functioning medium to make civil rights complaints while imprisoned"; (6) violated his right to due process; and (7) conspired to deprive him of his constitutional rights. ECF No. 19 at 14-17, 22, 29-31, 32.

3

Ellis claims that the City: (1) ignored Fourth and Fourteenth Amendment violations committed by its subordinates in violation of Ellis's 42 U.S.C. § 1983 rights; (2) negligently hired and retained incompetent and unfit officers who previously "had falsely arrested civilians without probable cause"; (3) is liable under respondeat superior for the actions of its subordinates; (4) violated his right to privacy by video recording his cell (including the toilet) while he was a pretrial detainee; (5) violated his right to privacy by video monitoring in the police department generally; (6) inadequately trained its officers for the detention and arrest of people who are "not carriers defined by the Texas Transportation Code"; and (7) failed to train them on how to recognize drug activity, supervise "unlawfully detained persons," provide "noninvasive holding cells for pretrial detained persons," and administer the submission of complaints. ECF No. 19 at 17-22, 22-28. Ellis also claimed that the City and Cooke (1) negligently hired the other defendants and (2) ratified the other their misconduct by knowingly ignoring it *Id*. at 28-29, 31-32

Ellis seeks an injunction against the City to stop its enhanced traffic enforcement policy and the recording of cells of pretrial detainees; a declaratory judgment that unreasonably searching and seizing cars based on race violates the Fourth and Fourteenth Amendments; $5,000,000 in compensatory damages; and punitive damages, attorney's fees, and costs of suit. ECF No. 19 at 33-38.

## II.    LEGAL AUTHORITIES

### A.    *Pro Se* Standard

Courts are to liberally construe the pleadings of a *pro se* party, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

106 (1976)). But "even a liberally construed *pro se* . . . complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

### B.    Rule 12(b)(6) Dismissal for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Additionally, Rule 12(b)(6) authorizes a court to dismiss frivolous claims. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Where the plaintiff proceeds in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal--[] is frivolous or malicious[.]" 28 U.S.C.A. § 1915(e)(2)(B)(i) A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke*, 490 U.S. at 325. "A complaint lacks an arguable basis in law if it is

based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (internal quotation marks omitted). Baseless allegations include those that are fanciful, fantastic, delusional, irrational, or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). The statute gives judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 32 (citing *Neitzke*, 490 U.S. at 327).

### C.    Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)). Since the motion to dismiss stage is the earliest possible stage of litigation, the issue of qualified immunity must be decided then if properly raised. *See Carswell v. Camp*, 37 F.4th 1062, 1067-68 (5th Cir. 2022).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). To be "'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635 (1987). "Both steps in the qualified immunity analysis are questions of law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). The Court

may decide which prong to address first. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009). A good-faith assertion of qualified immunity alters the usual burden of proof, "shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020).

### D.    Dismissal With or Without Prejudice

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). As a result, courts generally allow plaintiffs at least one opportunity to amend their pleadings. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329-30 (2002). Nonetheless, a court may appropriately dismiss an action with prejudice if it finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss a complaint with prejudice, thus foreclosing the plaintiff's opportunity to amend, whenever amendment of the pleadings would be futile. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016).

## III.    ANALYSIS

Defendants argue in their motions to dismiss, among other things, that (1) Ellis's claims against individual defendants in their official capacity are redundant and should be dismissed; (2) Ellis's sovereign-citizen claims are frivolous and should be dismissed; and (3) Ellis does not state a claim elsewhere on which relief may be granted. *See* ECF Nos. 26, 28, 30, 32, 34-35, 38. The Court addresses each argument in turn and concludes that Ellis's claims should be dismissed.

### A.    Ellis's claims against Cooke, Wyly, Loser, Bukowski, Stewart, and Valladares in their official capacity are redundant and should be dismissed.

Ellis sues the City, and he also sues the other Defendants in "their official and individual capacities." ECF No. 19 at 4. "In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued . . . . [t]he official capacity claims

and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). In the Fifth Circuit, it is appropriate to dismiss claims against officers in their official capacities when "the allegations duplicate claims against the respective governmental entities themselves." *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Accordingly, because Ellis's claims against the City and the other Defendants in their official capacities are duplicative and "essentially merge," Judge O'Connor should **dismiss** all of Ellis's claims against Cooke, Wyly, Loser, Bukowski, Stewart, and Valladares in their official capacity **with prejudice**.

       **B.**    **Ellis's sovereign-citizen claims are frivolous and should be dismissed.**

Defendants argue that Ellis's claims are based on his theory that he is a "sovereign citizen" who "need not abide by Texas laws regulating the operation of motor vehicles, including carrying and providing a stopping officer with a valid driver's license, and displaying valid license plates on his vehicle." ECF Nos. 26 at 15-16; 28 at 15; 30 at 15; 32 at 15; 34 at 16; 35 at 14. Defendants argue that Ellis's sovereign-citizen legal arguments are invalid and "have been overwhelmingly rejected for years as frivolous and 'indisputably meritless.'" ECF Nos. 26 at 16; 28 at 16; 30 at 16; 32 at 16; 34 at 17; 35 at 15. They state that because Ellis's claims "stem from his untenable legal theory that he was not required to provide officers with a driver's license or to display license plates when operating his vehicle," the Court "need not separately address each individual cause of action[.]" ECF Nos. 26 at 16-17; 28 at 16-17; 30 at 16-17; 32 at 17; 34 at 17-18; 35 at 14-15. Defendants assert that because Ellis's arguments are meritless and frivolous, the Court should dismiss these claims with prejudice. ECF Nos. 26 at 18; 28 at 18; 30 at 18; 32 at 18; 34 at 19; 35 at 16.

Ellis responds that he "will never be a self-professed sovereign citizen" and that Defendants improperly labelled him as such. ECF No. 27 at 2; 33 at 8. But Ellis continues to maintain that the Defendants violated his constitutional "right to travel freely and unencumbered[.]" ECF No. 27 at 2. Specifically, he argues that this right trumps state law requirements of a driver's license and a license plate, and because the Constitution does not require either of these, he should be able to drive freely without either. ECF No. 27 at 3. He also concludes that he pleaded enough facts, taken as true, to state a plausible claim on which relief may be granted. ECF No. 27 at 3-4. Finally, he argues for various reasons that he need not possess a driver's license. ECF No. 33 at 6-7.

After reviewing all of the documents filed in this case and the relevant caselaw, the Court finds that Plaintiff's claims largely derive from the so-called sovereign-citizen (or some similar) movement and are legally frivolous. Sovereign-citizen legal arguments like those found in Ellis's Amended Complaint are indisputably meritless. So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States citizens. *Gravatt v. United* States, 100 Fed. Cl. 279, 282 (2011). They claim as grounds for this belief the "Uniform Commercial Code, maritime and admiralty law, the idea of strawman trusts, and Bible verses." *Mason v. Anderson*, No. CV H-15-2952, 2016 WL 4398680, at *2 (S.D. Tex. Aug. 18, 2016). Sovereign citizens often attempt to use these beliefs to "avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt*, 100 Fed. Cl. at 282. But these citizens cannot claim to be sovereigns, independent of governmental authority, while they simultaneously ask the judicial system to grant them recourse. *Mason*, No. CV H-15-2952, 2016 WL 4398680, at *2. Courts routinely dismiss sovereign-citizen claims. *Id.*; *see also, e.g., Berman v. Stephens*, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (collecting cases) ("His reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution

9

and beyond the jurisdiction of the state or federal courts is frivolous. The same or similar arguments have been repeatedly rejected by other courts and are rejected by this Court.").

Although Ellis attempts to distance himself from the sovereign-citizen movement, his filings are replete with identifying characteristics of the movement. For example, he describes himself as "a person residing in the United States." ECF No. 19 at 3. He claims he is "not affiliated with the Texas Transportation Code," and that he is not a "carrier defined by the Texas Transportation Code." ECF No. 19 at 2, 5, 6, 27. He argues that he "has not given away his rights in exchange for privileges" and that Texas lacks authority to charge him since "he has not contracted with the Department of Motor Vehicles and the State cannot require Eric Ellis to give a right in exchange for a privilege." *Id*. at 10. He also argues that he has the "right to travel freely without a 'license plate'" *Id*. And that he may "ignore the license and fee and engage in the right" to drive his vehicle "with impunity." *Id*. at 11 (internal quotation marks omitted). So, regardless of how Ellis titles or describes them, his arguments arise from the premise that he is not subject to the Texas Transportation Code or Texas law in general governing operation of a motor vehicle.

Contrary to Ellis's contentions, the "Supreme Court established 'long ago that states may regulate the operation of all motor vehicles that drive within their borders,' including the licensing and registration of drivers 'pursuant to their constitutionally protected police power.'" *Van Horne v. Valencia*, No. 1:21-cv-00173-BU, 2022 WL 3574299, at *5 (N.D. Tex. Feb. 16, 2022), *report and recommendation adopted*, No. 1:21-cv-173-H, 2022 WL 2800878 (N.D. Tex. July 18, 2022) (citing *Perkins v. Ivey*, 772 F. App'x 245, 246 (5th Cir. 2019)). "Texas law states that 'drivers may not operate a motor vehicle on a highway in this state unless the person holds a driver's license' and must produce the license if requested by a police officer." *Id*. (quoting Tex. Transp. Code §§ 521.021, 521.025). "During a traffic stop, a police officer has the right to ask the driver for

identification." *Id*. (citing *U.S. v. Brigham*, 382 F. 3d 500 (5th Cir. 2004)). While certain persons are exempt from the Texas license requirement, Ellis does not allege that he fits within one of the exemptions. Tex. Transp. Code. Ann. § 521.027.

Moreover, it is an offense to operate a vehicle without a license plate in Texas. Tex. Transp. Code § 504.943 ("[A] person commits an offense if the person operates on a public highway, during a registration period, a motor vehicle that does not display two license plates . . . ."). Ellis does not dispute that he did not comply with the driver's license or license plate requirement. *See* ECF No. 19 at 5. Rather, he argues that he is not subject to these laws in the first place. The claims stemming from these arguments, whether denominated as sovereign-citizen rights, are legally frivolous. Amendment of these arguments would be futile, and Judge O'Connor should **dismiss** them **with prejudice**.

### C.    Ellis does not state a Fourteenth Amendment equal protection claim.

Ellis alleges that all Defendants violated the Equal Protection Clause of the Fourteenth Amendment. ECF No. 19 at 15-16. The Fourteenth Amendment "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To establish a claim under the Equal Protection Clause, a plaintiff must show that two classes of similarly situated persons were treated differently. *Id*. A plaintiff also must prove "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (internal quotation marks and citation omitted). All persons need not "be dealt with identically[,]" but any distinctions made must "have some relevance to the purpose for which the classification

is made." *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (internal quotation marks and citation omitted).

Ellis alleges that the City, along with several other cities, enacted an "illegal 'stop and seize' practice of targeting, stopping, detaining, searching, and often seizing property from, apparently non-white persons." ECF No. 19 at 1. Ellis asserts that the City selectively enforces its driver's license and license plate requirements against black people and were implemented with the purpose of targeting black people. ECF No. 19 at 1, 5. He alleges that the targeting violates "the citizens' rights, not for any legitimate law enforcement purpose but to enrich their offices and perhaps themselves, by seizing and converting cash and other valuable personal property they can find during the illegal stop and seize practice." ECF No. 19 at 2. He also claims that the discrimination is intentional. ECF No. 19 at 5, 11, 13, 15.

Ellis alleges that he was arrested twice for driving without a license plate. ECF No. 19 at 5, 11. He asserts that he was targeted because of his race. ECF No. 19 at 5, 13. But he does not dispute that he did not have a license plate. *See* ECF No. 19 at 5 ("Eric Ellis's vehicle has no state provided stickers or anything that would give Defendant Officer Wyly the impression that Eric Ellis was a carrier defined by the Texas Transportation Code."). While he cites several online articles purporting to show the City's "very racial history" (ECF No. 19 at 13), he pleads no facts to show selective enforcement of this alleged policy. And in his responses to the Motions to Dismiss, while Ellis reasserts the same allegations and arguments, he states no facts to show any sort of discrimination. *See* ECF Nos. 41 at 2-3; 27; 33. His two arrests for offenses related to a facially neutral license plate requirement are not sufficient to show selective enforcement of the license plate requirement. Because Ellis does not show a Fourteenth Amendment equal protection violation, Judge O'Connor should **dismiss** this claim **with prejudice**.

**D.    Ellis does not state a claim under Title VI of the Civil Rights Act.**

Ellis alleges that the City violated Title VI of the Civil Rights Act of 1964. ECF No. 19 at 16. Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Private individuals may sue to enforce this provision. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). Title VI "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275 (2001). So, "a Title VI plaintiff must prove discriminatory intent" to prevail. *Billiot v. Terrebonne Par. Sch. Bd.*, No. CV 21-1144, 2021 WL 5083710, at *3 (E.D. La. Nov. 2, 2021) (citing *Fennell*, 804 F.3d at 408).

To state a claim under Title VI, a plaintiff must allege that "(1) the defendant engaged in intentional discrimination based on race, color, or national origin; and (2) that the defendant received federal financial assistance." *Pathria v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 531 F. App'x 454, 455 (5th Cir. 2013) (emphasis removed). Where a plaintiff does not allege a discriminatory policy, he "must plausibly allege that an 'appropriate person' in the district—i.e., someone who could take corrective measures—had 'actual knowledge' of intentional discrimination yet responded with 'deliberate indifference.'" *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020).

Ellis seems to allege both that the driver's license/plate policy is racially discriminatory and that the enforcers of the policy engaged in racial discrimination. *See* ECF No. 19 at 16-17. But for the same reasons stated previously, Ellis does not allege facts showing any sort of discrimination, let alone intentional discrimination. *See supra* Section III.C. Thus, Ellis does not

13

state a claim for violation of Title VI, and Judge O'Connor should **dismiss** this claim **with prejudice**.

### E.    Ellis raises no invasion of privacy claims.

Ellis alleges that the placement of cameras in his cell that could record the toilet violated his Fourth Amendment right to privacy and constituted a state tort of invasion of privacy. ECF No. 19 at 19-22. But a pretrial detainee "does not have an expectation of privacy in his cell," so Ellis cannot claim an unreasonable search and seizure under the Fourth Amendment or a claim for invasion of privacy under state law. *Gross v. Normand*, 576 F. App'x 318, 320 (5th Cir. 2014) (citing *Marshall v. Norwood,* 741 F.2d 761, 763-64 (5th Cir.1984)); *see also United States v. Ward*, 561 F.3d 414, 419 (5th Cir. 2009) (stating that "as a per se rule a prisoner cannot invoke the Fourth amendment because society is not prepared to recognize a prisoner's expectation of privacy in his prison cell"). Thus, Judge O'Connor should **dismiss** these claims **with prejudice**.

### F.    Qualified immunity bars Ellis's excessive detention claim.

Ellis alleges that Defendants violated his right to timely release "under the Fourth Amendment and the Due Process Clause" of the Fourteenth Amendment. ECF No. 19 at 22. Specifically, he argues that Valladares and Bukowski "violated clearly established law by refusing to promptly release [him] after he signed the promise to appear." ECF No. 41 at 8. He cites to section 543.005 of the Texas Transportation Code, which provides that after an "arrested person make[s] a written promise to appear in court . . . . [t]he officer shall then promptly release the person from custody." Tex. Transp. Code Ann. § 543.005 (West 2023). But this provision is irrelevant to this case because Ellis does not allege that he made a written promise to appear in court to his arresting officers at any time. Instead, he alleges that he signed release papers after appearing before state Magistrate Magnuson. ECF No. 19 at 9.

Ellis alleges that his detention of around five hours was unconstitutional. ECF No. 19 at 9. The Fifth Circuit "has recognized the 'clearly established right to timely release from prison.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022), *cert. denied*, No. 22-1171, 2023 WL 6377920 (U.S. Oct. 2, 2023). But detainees are not entitled to "instantaneous release: it is reasonable for jailers to have some administrative delay in processing an inmate's discharge." *Id*. The jailer's duty to timely release a detainee "is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which" he is detained. *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1968). Courts "have declined to define the amount of delay that is reasonable," but "overdetention by 30 days is a per se deprivation of due process." *Id*. at 188, 191.

Ellis has failed offer any relevant caselaw to show that a delay of five hours in releasing a detained person is a constitutional violation. *See contra Wilson v. Baucom*, No. A-20-CV-311-RP, 2021 WL 7081073, at *9 (W.D. Tex. Sept. 15, 2021) (Where plaintiff was arrested, sentenced to serve one day in jail, and released two days later, his "weekend confinement, following his arrest based on probable cause, was not a constitutional violation."), *report and recommendation adopted*, No. 1:20-CV-311-RP, 2021 WL 6755199 (W.D. Tex. Oct. 5, 2021), *reconsideration denied*, No. 1:20-CV-311-RP, 2022 WL 1308827 (W.D. Tex. May 2, 2022), *aff'd*, No. 22-50066, 2023 WL 4288350 (5th Cir. June 30, 2023).

Even if he had pleaded a constitutional violation due to an extended detention, Ellis does not show how Valladares, Bukowski, or any other Defendant's conduct in delaying his release, was objectively unreasonable in light of clearly established law. Consequently, Ellis has not overcome Defendants' qualified immunity, and Judge O'Connor should **dismiss** his claims of a constitutional violation due to over detention **with prejudice**.

15

**G.    Ellis does not state a gross negligence claim.**

Ellis alleges that while at "the White Settlement Police Department," Wyly denied him "his rights to file a written civil rights complaint." ECF No. 19 at 9. He also alleges that he "used the dispatch button from inside the cell to request a complaint form." *Id*. He argues that by refusing "to provide Ellis with a functioning medium to make civil rights complaints while imprisoned," the Defendants exhibited "conscious disregard and indifference to the well-being of Ellis" and caused him to suffer "extreme and severe mental and emotional distress, agony[,] anxiety[,]" pain, suffering, "and eventually death." *Id*. at 29-30. He argues this constitutes gross negligence. *Id*.

But Ellis does not have a federally protected liberty interest in the White Settlement Police Department's grievance procedures. *Harris v. Gregg Cnty. Sheriff's Dep't*, No. 6:21-cv-463, 2022 WL 1277302, at *2 (E.D. Tex. Apr. 1, 2022), *report and recommendation adopted*, No. 6:21-cv-00463, 2022 WL 1271131 (E.D. Tex. Apr. 28, 2022) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). "When the claim underlying the administrative grievance involves a constitutional right," the pretrial detainee's "right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's failure to comply with appropriate grievance procedures." *Jones v. Williams*, No. 4:99-cv-779-B, 2001 WL 283101, at *5 (N.D. Tex. Mar. 19, 2001). In filing suit, Ellis has taken advantage of his right to petition the courts for redress of grievances. He does not contend that any Defendant interfered with that right. Thus, he has not overcome Defendants' qualified immunity here, and Judge O'Connor should **dismiss** this claim **with prejudice**.

**H.**    **Ellis does not state a claim for retaliation.**

Ellis does not specifically state a claim for retaliation in the "Claims for Relief" section of his Amended Complaint, but he alleges elsewhere that his arrest was partially in retaliation for his questioning of the traffic stop's legitimacy. ECF No. 19 at 8-9, 11. To plead a First Amendment retaliation claim, a plaintiff must allege facts to show (1) he was "engaged in constitutionally protected activity[;] (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "[W]here a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause of an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Allen v. Cisneros*, 815 F.3d 239, 244-45 (5th Cir. 2016) (citing *Keenan*, 290 F.3d at 261-62). "Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018). This includes "even a very minor criminal offense." *Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001).

The police stopped Ellis for failure to display a license plate and arrested him for this and for not presenting a driver's license. ECF No. 19 at 9-10. Ellis does not dispute that he lacked both a license plate and a driver's license. *See* ECF No. 19 at 5-6 ("Eric Ellis's vehicle has no state provided stickers or anything that would give Defendant Officer Wyly the impression that Eric Ellis was a carrier defined by the Texas Transportation Code."). In Texas, a "peace officer may arrest without warrant a person found committing a violation of" traffic laws. *State v. Gray*, 158

S.W.3d 465, 469 (Tex. Crim. App. 2005). Thus, the arresting officer had probable cause to arrest Ellis, and "the objectives of law enforcement" took primacy over Ellis's right to avoid retaliation. *Keenan*, 290 F.3d at 261-62.

Ellis argues that he was arrested "for a non-jailable offense," and that his search and arrest were unreasonable because (1) he had no prior offenses; (2) he told the officers he was not transporting goods or persons commercially; (3) the charges were "Class C misdemeanor fine only offenses"; and (4) his children were "arrested . . . in order to successfully arrest" Ellis. ECF No. 41 at 6-7. But as shown above, Ellis's conclusion is legally wrong because driving without a license plate is an arrestable offense. *See Atwater*, 532 U.S. at 353. Consequently, Ellis does not state a claim for retaliation, and Judge O'Connor should **dismiss** this claim **with prejudice**.

## I.    Ellis has not pleaded supervisory liability against the City or Cooke.

Ellis alleges that the City was aware of "violations of Plaintiff's [c]onstitutional rights" (ECF No. 19 at 17); that it negligently hired and retained officers who "were incompetent and unfit for their positions" and "falsely arrested civilians without probable cause" (*id.* at 18); that it was liable for respondeat superior because of its employee's "tortious conduct" (*id.* at 19); that it "failed to adequately train" its employees (*id.* at 24-28); that the City and Cooke "negligently retained" Wyly, Loser, Bukowski, Stewart, and Valladares (*id.* at 28-29); and that the City and Cooke "ratified" the alleged "violations of Ellis's civil rights" (*id.* at 31-32). *See also id.* at 11, 13.

Ellis did not plead sufficient facts to support relief on any of these claims. Instead, he makes only conclusory allegations, most of which depend on either his frivolous sovereign-citizen arguments or on an underlying violation of his constitutional rights. As discussed above, Ellis does not state a claim for any violation of his constitutional rights. *See generally supra* Part III. And "[s]ection 1983 does not create supervisory or respondeat superior liability." *Brown v. Taylor*, 911

F.3d 235, 245 (5th Cir. 2018) (emphasis removed). Instead, a supervisory official may be held liable if a plaintiff shows either that the supervisor was personally "involved in the constitutional violation or that there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." *Id*. Thus, to the extent that Ellis alleges that Defendants are liable for acquiescence, knowledge of subordinate misconduct, or inadequate supervision, Ellis does not assert a legally cognizable claim. For all of these reasons, Judge O'Connor should **dismiss with prejudice** Ellis's claims against the City and Cooke.

### J. Ellis does not plead facts to show a conspiracy among Defendants.

Ellis broadly alleges that Defendants conspired against him to deprive him of his rights. ECF No. 19 at 12, 32-33. To sufficiently plead a civil conspiracy under section 1983, Ellis must show that there was "an actual violation of a right protected under [section] 1983" and that "[the] action [was] taken in concert by the defendants with the specific intent to violate [that] right." *Brown v. Tull*, 218 F.3d 743, at *4 (5th Cir. 2000). "[A] conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *See Brown*, 218 F.3d at *4 (internal quotation marks and citation omitted). *Id*. Blanket accusations and "conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Id*. Plaintiffs must specifically identify "an illegal objective among the alleged conspirators." *Id*. (cleaned up).

Ellis does not state facts showing that any of the Defendants violated his constitutional rights, nor does he present any factual support of any specific intent to violate his constitutional rights. In the absence of those facts, he cannot state a claim for conspiracy against any Defendant, and Judge O'Connor should **dismiss** these claims **with prejudice**.

## IV.     CONCLUSION

Ellis's claims largely stem out of frivolous arguments rooted in the sovereign-citizen movement that he is not subject to Texas motor vehicle laws. His remaining claims do not state a claim upon which relief may be granted and do not overcome the Defendants' qualified immunity. Ellis has amended his complaint once, and the undersigned carefully examined all of Ellis's filings. The Court concludes that he has pleaded his best, though legally unsupportable, case against Defendants. Any further amendment would be futile and would only cause unnecessary delay.

Therefore, after considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motions to Dismiss (ECF Nos. 26, 28, 30, 32, 34-35, 38) and **DISMISS** Plaintiff's claims against Defendants **with prejudice**.

The undersigned further **RECOMMENDS** that Judge O'Connor **DENY** all other pending motions (ECF Nos. 47, 55-56, 62-63, 65, 71, 89, 91-92) as **MOOT**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

20

upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

      **SIGNED** on November 28, 2023.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE